UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:18-CV-00076-HBB

**BRANDON LEWIS JOHNSON**                                                          **PLAINTIFF**

**VS.**

**NANCY A. BERRYHILL**, Acting
**Commissioner of Social Security**                                           **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Brandon Johnson seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 13) and Defendant (DN 18) have filed a Fact and Law Summary. For the reasons that follow, the undersigned orders that judgment be granted in favor of the commissioner.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 11). By Order entered July 23, 2018 (DN 12), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

### FINDINGS OF FACT

Plaintiff filed an application for a period of disability and disability insurance benefits on October 2, 2014 (Tr. 27). Johnson alleged that he became disabled on September 1, 2014 as a result of back pain, pinched nerve in left leg, depression, chronic pain, headaches, Attention Deficit

Hyperactive Disorder, neck pain, numbness in left leg, anxiety (Tr. 105). Administrative Law Judge Maribeth McMahon ("ALJ") conducted a hearing on June 1, 2017 via video conference from Paducah, Kentucky. Plaintiff appeared from Madisonville, Kentucky and is represented by Brent Yonts. Also present and testifying was James Adams, M.A., an impartial vocational expert.

In a decision dated November 21, 2017, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 27-41). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since September 1, 2014, the alleged onset date (Tr. 29). At the second step, the ALJ determined that Plaintiff's degenerative disc disease, right-sided hearing loss, depression, anxiety, and attention deficit hyperactivity disorder (ADHD) are "severe" impairments within the meaning of the regulations (Tr. 29). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 30).

At the fourth step, the ALJ found Plaintiff has the residual functional capacity to perform light work (Tr. 32). More specifically, the ALJ found that Plaintiff can lift or carry 20 pounds occasionally and 10 pounds frequently; stand or walk with normal breaks for 6 hours in an 8-hour workday; push or pull consistent with lifting or carrying weights. He can perform frequent overhead reaching bilaterally. He can occasionally push or pull with lower extremities, He can never climb ladders, ropes or scaffolds, but can occasionally climb ramps and stairs. He can occasionally stoop, kneel, crouch, and crawl. He can frequently balance. He should avoid concentrated exposure to vibrations and loud noises. He is able to understand, remember and carry out simple instructions. He is able to maintain attention and concentration for the time required to complete simple tasks. He is able to work in coordination with or in proximity to others without

being distracted by them. He can complete a normal workweek without excessive interruptions from psychologically based symptoms. He is able to respond appropriately to supervisors and coworkers but can have only occasional contact with the public. He is able to adapt to routine changes and avoid hazards in a work setting with routine support and structure. (Tr. 32). Relying on testimony from the vocational expert, the ALJ found that Plaintiff is unable to perform any of his past relevant work as a coal miner, lineman, material handler, and tree cutter (Tr. 40).

The ALJ proceeded to the fifth step where he considered Plaintiff's residual functional capacity, age, education, and past work experience as well as testimony from the vocational expert (Tr. 40). The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Tr. 40). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from September 1, 2014 through the date of the decision (Tr. 41).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 204-205). The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting

Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. \_\_\_\_). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

Challenged Findings

1. The ALJ Unconstitutionally Applied the Medical-Vocational Guidelines (grid rules).

It appears that Johnson is challenging the constitutionality of the Medical Vocational Guidelines, otherwise known as grid rules, as applied to his application for Social Security benefits. He argues that he was unconstitutionally discriminated against because of his age. (DN 13-1 PageID# 784).

At the fifth step in the Commissioner's Sequential Evaluation Process, The ALJ appropriately considered Johnson's residual functional capacity, age, education, and work experience in conjunction with the Medical Vocational Guidelines (Tr. 40). The ALJ found that Johnson could perform light work with certain limitations. The grid rules require different

standards to be met to support a finding that a claimant is disabled based on that claimant's age. Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. The use of grid rules as a framework to decide Social Security disability cases is not inconsistent with the Social Security Act. Heckler v. Campbell, 461 U.S. 458, 467-68 (1983). The Sixth Circuit has held that the grid rules do not unfairly discriminate against a claimant based on age. Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983). Johnson cites no case law to support his contention that the grid rules are unconstitutional. Nor does he present any evidence from the record that the ALJ inappropriately applied the grid rules to unfairly deny him benefits "essentially because of his youth." He merely asserts that he was 31 years old at the alleged onset date of disability and recites the ALJ's determination of his Residual Functional Capacity at Step Four and his jobs he can perform at Step Five. Johnson's argument is entirely without merit.

Johnson adds that the ALJ incorrectly applied the grid rules to (DN 13-1 PageID # 785). He argues the ALJ contradicts herself by "conflat[ing] sedentary and light work and the requirements" (Id.). Johnson misconstrues the ALJ's finding. If a claimant's age, education, previous work experience, and residual functional capacity do not coincide with all the criteria of a particular Grid Rule, the Commissioner is limited to using the Grid Rule as a framework in the decision-making process and must make a non-guideline determination based on the testimony of a vocational expert. 20 C.F.R. §§ 404.1566(e), 416.966(e); Born, 923 F.2d at 1174; Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987); Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 531, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983). In this situation a vocational expert will be "able to determine the size of the remaining occupational base, cite specific jobs with the individual's residual functional capacity, and provide a statement of the

incidence of those jobs in the region of the individual's residence or in several regions of the country." Wright v. Massanaari, 321 F.3d 611, 615-16 (6th Cir. 2003). That is precisely what happened here. The ALJ relied on the testimony of the Vocational Expert to determine that Johnson is capable of performing light work with some limitations. In other words, he can perform some light and some sedentary work. Johnson mistakes this finding for conflating light and sedentary work, somewhat incredulously arguing, the ALJ has required him to work more hours "than there are in a day" (DN 13-1 PageID # 785). Contrary to Johnsons claims, the ALJ appropriately used the grid rules as guidelines. She based her finding of jobs that Johnson can perform on the testimony of the vocational expert. This constitutes substantial evidence. See Bradford v. Sec'y, Dep't. of Health & Human Servs., 803 F.2d 871, 874 (6th Cir. 1986). Therefore, this Court may not disturb the ALJ's decision.

2. Vocational Expert's Opinion

Johnson contends the ALJ ignored the vocational expert's opinion that he was disabled (DN PageID # 786). The record does not support Johnson's assessment of the vocational expert's opinion. The vocational expert testified that Johnson could not complete any of his past relevant work. However, that is not the definition of disabled as defined by the Social Security Act. A person is disabled if they are unable to "engage in any substantial activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a). The VE testified that Johnson could complete jobs at the light and sedentary level, specifically, Bagging Salvage (light, SVP 1), Collator Operator, (light SVP 2), Warehouse Checker

(light, SVP 2), Puller-through or Turner (Sedentary, SVP 1), Dial Marker (Sedentary, SVP 2), Patcher (Sedentary, SVP 2) (Tr. 88-92).

Johnson seems to argue that the nature of the ALJ's hypotheticals to the vocational expert at his hearing were prejudicial and indicative of a decision based purely on his age. There is nothing in the record to support this claim. As explained in the previous section, if a claimant cannot perform substantially all of the exertional demands of work at a given level of exertion, the medical-vocational rules are used as a framework for decision making. The ALJ reasonably determined that Johnson could not perform the full range of light work given his limitations (Tr. 41). Therefore, her opinion adopted the vocational expert's answers to hypotheticals inquiring if jobs existed in significant numbers in the national economy that Johnson could perform given his age, education, work experience, and residual functional capacity. *See* 20 CFR 404.1569(a). This the correct application of the law.

A vocational expert's testimony can constitute substantial evidence to support the Commissioner's finding that a plaintiff is capable of performing a significant number of jobs existing in the local, regional, and national economies, Bradford v. Sec'y, Dep't. of Health & Human Servs., 803 F.2d 871, 874 (6th Cir. 1986) (per curiam), so long as a vocational expert's testimony is based on a hypothetical question which accurately portrays the plaintiff's physical and mental impairments. Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987). A hypothetical question is not erroneous where at least one doctor substantiates the information contained therein. Hardaway v. Sec'y of Health & Human Servs., 823 F.2d 922, 927-28 (6th Cir. 1987) (per curiam). The ALJ's hypotheticals more than satisfied this standard, and her opinion ultimately adopted the testimony of the VE (Tr. 42). Johnson begrudges the ALJ's decision not to discuss all the hypotheticals proposed at the hearing (DN 13-1 PageID # 787).

However, these hypotheticals were based on the medical source statements of Dr. Chappell and Dr. Jungblom. The ALJ afforded no weight to these opinions when determining Johnson's residual functional capacity and provided good reasons for doing so (Tr. 38-39). *See* Cole v. Astrue, 661 F.3d 931, 939 (6th Cir. 2011). Thus, the hypotheticals raised by Johnson were irrelevant to the ALJ's finding of whether Johnson was disabled at Step Five in the Sequential Evaluation Process. Johnson's argument is without merit.

3. The ALJ Disregarded Evidence

Johnson argues that the ALJ erroneously failed to consider certain medical evidence in her opinion. To some extent, this argument permeates Johnson's entire brief. However, he explicitly mentions that the ALJ did not mention hearing loss in her posed hypotheticals, nor did she factor in all the proposed vocational limitations in the medical source statements by Dr. Chappell and Dr. Jungblom (DN 13-1 PageID # 788).

First, the record does not support Johnson's claims. The ALJ considered Johnson's hearing loss due to Meniere's disease a severe impairment (Tr. 29). She also addressed it when assessing Johnson's residual functional capacity (Tr. 35). As a result, she recommended that he avoid any concentrated exposure to loud noises (Tr. 35).

Johnson's argument concerning medical source statements is equally without merit. It is based on a fundamental misunderstanding of the standard of review that binds this Court. The undersigned is limited to reviewing whether the ALJ's opinion is based on substantial evidence. If so, no further inquiry is permitted. This is true even if substantial evidence would support the opposite conclusion. Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992). Johnson argues that the ALJ erroneously ignored medical source statements from Dr. Chappell and Dr. Jungblom. This is incorrect.

The regulations require Administrative Law Judges to evaluate every medical opinion in the record. 20 C.F.R. §§ 404.1527(c); 416,927(c).[1] The process of assigning weight to medical opinions in the record begins with a determination whether to assign controlling weight to the medical opinion of the treating source. 20 C.F.R. §§ 404.1527(c); 416,927(c). If controlling weight is not assigned to the treating source's opinion, the Administrative Law Judge must consider the factors in paragraphs (c)(1)-(6) of this section in deciding how much weight to accord each of the medical opinions in the record, including the medical opinion from the treating source. 20 C.F.R. §§ 404.1527(c); 416.927(c). The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. *Id.* § 404.1527(c)(2). The procedural requirements to assign weight to the opinion of a treating source and provide "good reasons" for that weight serves both to ensure adequacy of review and to give the claimant a better understanding of the disposition of his case. Cole v. Astrue, 661 F.3d 931, 939 (6th Cir. 2011) (citing Rogers v. Comm'r, 486 F.3d 234, 242 (6th Cir. 2007)).

The ALJ fully complied with these procedural requirements when determining Johnson's residual functional capacity at step four. The ALJ considered Dr. Chappell as a treating source and afforded the opinion no weight (Tr. 38). The ALJ noted that Dr. Chappell is a family practitioner and her opinions were inconsistent with the rest of the medical evidence in the record, even her own treatment notes. (Tr. 38). The ALJ considered Dr. Chappell's opinion that Johnson was disabled, but correctly noted this is a question left to the commissioner (Tr. 38).

Dr. Jungblom's opinion was also afforded no weight. Dr. Jungblom performed a one-time psychological evaluation of Johnson in September 2015 (Tr. 36). Dr. Jungblom was not a treating

---

[1] Effective March 26, 2012, the numbering of the treating physician rules changed. Section 416.927(d)(2) became 416.927(c)(2), and section 404.1527(d)(2) became 404.1527(c)(2).

source, and therefore was not evaluated for controlling weight. The ALJ afforded her opinion no weight because it was inconsistent with the rest of the medical record (Tr. 36). State agency mental consultants opined Johnson was able to perform a range of simple work. The ALJ determined this was consistent with the medical evidence in the record and adopted their opinion (Tr. 39). Thus, the ALJ's findings were based on substantial evidence. *See* Atterbery v. Sec'y of Health & Human Servs., 871 F.2d 567, 570 (6th Cir. 1989) (Opinions of a non-examining State agency psychological adviser that are consistent with the evidence of record represent substantial evidence to support the Administrative Law Judge's findings).

Notably, Johnson has failed to present any argument addressing the weight given to the various medical opinions in the record. He complains that the ALJ "ignored" evidence in the record. But the discussion above makes clear that is not accurate. The ALJ considered all the medical opinions, including those preferred by Johnson - Dr. Chappell and Dr. Jungblom. The ALJ afforded these decisions no weight and provided good reasons for doing so in accordance with Social Security Regulations. *See* Cole v. Astrue, 661 F.3d 931, 939 (6th Cir. 2011). Johnson does nothing more than attempt to elevate medical opinions that support his preferred outcomes. He does not address the ALJ's methods for assigning weight to the various medical opinions when assessing his RFC. This suggests a misunderstanding of the role of this Court. This Court may not conduct a *de novo* review of Johnson's case, it may simply determine if the ALJ has supported her opinion with substantial evidence. If she has, the undersigned must uphold that decision, even if substantial evidence supports the opposite conclusion. Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992). Johnson has not attempted to argue that the ALJ erroneously assigned weight to the medical opinions in the record. Therefore, he has waived that argument. *See* United States v. Layne, 192 F.3d 556, 566

(6th Cir.1999) (quoting McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir.1997)); *see also* Brindley v. McCullen, 61 F.3d 507, 509 (6th Cir.1995) (observing that "[w]e consider issues not fully developed and argued to be waived.").

ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgement is **GRANTED** for the Commissioner.

Copies:		Counsel